**Andrew P. KELLY, Plaintiff-Appellee,**

v.

**AMERICAN STANDARD, INC., a foreign Corporation, Defendant-Appellant.**

**Nos. 79–4005, 79–4081.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1980.

Decided Feb. 23, 1981.

Rehearing and Rehearing En Banc Denied April 23, 1981.

---

Michael J. Cronin, Spokane, Wash., for defendant-appellant.

Michael J. McMahon and Michael J. Myers, Randall & Danskin, Spokane, Wash., for plaintiff-appellee.

Before VAN DUSEN *, Senior Circuit Judge, ANDERSON and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge.

This appeal involves the proper measures of damage recovery under the Age Discrimination in Employment Act of 1967, Pub.L. 90–202, 81 Stat. 602 (1967) (codified at 29 U.S.C. § 621 et seq.) (ADEA), as well an an evaluation of the district court's jury instructions. The jury awarded Kelly damages for lost wages and pension benefits, business start-up costs, and emotional distress resulting from discharge by his employer. The trial judge further awarded Kelly prejudgment interest and attorney fees, but denied liquidated damages. We have concluded that, with a minor modification to the business start-up award, the jury verdict was proper. Furthermore, the award of prejudgment interest was correct and is affirmed as modified in this opinion. We conclude, however, that the trial judge applied an incorrect standard in denying liquidated damages, and remand to the district court for a redetermination of "willfulness." We also find that Kelly is entitled to attorney fees for this successful appeal, and leave calculation of the recoverable amount to the district court.

* Honorable Francis L. Van Dusen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

FACTS:

Kelly was employed as a territory sales representative by the defendant-employer American Standard, Inc. (American) from 1954 until July 1, 1975. Because American sold its hydronics manufacturing plant, it decided to reduce its nationwide sales division personnel by forty employees, including one salesman from its Seattle sales district. Kelly was the Seattle salesman discharged. Kelly brought suit against American, alleging that his termination was a violation of the ADEA and the Washington State Law Against Discrimination (Wash. Rev.Code Ann. §§ 49.60; 49.60.180(2) (Supp. 1980)). Kelly was 57 in 1975, and he contends that American terminated him because of his age, to make room for younger salesmen.

The case was tried by a jury. Kelly introduced statistical evidence tending to prove a pattern of age discrimination in American's nationwide discharge plan. Kelly also introduced evidence of American's discriminatory intent. He testified that American's district sales manager told him that American planned to retain a younger man in Kelly's position in Seattle, who would have "many years to offer the company." Kelly also testified that American's vice president in charge of sales told him that the average age of salesmen was "too high" and that "something had to be done about it." American's representatives denied that such statements were made, and testified that Kelly was terminated because he was the least effective member of the Seattle sales force. The jury was instructed on both the state and federal age discrimination legislation, and returned a verdict in favor of Kelly.

The jury awarded total damages of $48,500; including $25,000 for lost income, $2,000 for lost pension benefits, $6,500 for business start-up costs, and $15,000 for mental suffering. By agreement of the parties, the court rather than the jury determined the availability and amount of liquidated damages, prejudgment interest, and attorney fees. The court awarded prejudgment interest of 8% on $27,000, and attorney fees of $14,000. However, it denied Kelly's request for liquidated damages under the ADEA, finding that American had not acted "willfully" under 29 U.S.C. § 626(b), and further finding that the "good faith" defense of 29 U.S.C. § 260 applied.

American appeals the trial court's award of prejudgment interest to Kelly. American also appeals the jury verdict in favor of Kelly, contending that damages for emotional distress are not available under state or federal law, and that the jury instructions were erroneous or incomplete in several respects. Kelly cross-appeals, contending that liquidated damages were improperly denied, and that he is entitled to attorney fees on appeal. The issue of the ADEA violation itself is not directly raised on this appeal, except insofar as American challenges the district court jury instructions.

## I. LIQUIDATED DAMAGES

### A. ADEA Enforcement

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."[1] This proscription is enforced through express incorporation of the remedial rights and procedures of the Fair Labor Standards

---

1. 29 U.S.C. § 623(a) provides:
 (a) It shall be unlawful for an employer
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
 (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
 (3) to reduce the wage rate of any employee in order to comply with this chapter.
 As stated in section 2(b) of the Act, 29 U.S.C. § 621(b), the ADEA was passed to "promote employment of older persons based on their ability rather than age . . . ." The Act prohibits employers from discriminating in hiring, promotion or discharge, against those between 40 and 70 years old. 29 U.S.C. § 631(a). There are situations where disparate treatment of older workers is not unlawful, notably where age

Act (FLSA), rather than through independent ADEA remedies. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides that its provisions "shall be enforced in accordance with the powers, remedies, and procedures provided in sections 11(b), 16 . . . and 17 of the Fair Labor Standards Act of 1938, as amended . . . ."[2] Pursuant to those statutes, an employer who violates the ADEA is liable for back wages and benefits, as well as "an additional equal amount as liquidated damages."[3]

The jury awarded Kelly $27,000 in lost wages and pension benefits, but Judge Neill denied Kelly's request for liquidated damages in an equal amount because he found no evidence that American's violation was "willful," and because he concluded that the "good faith" defense of section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, applied to American's conduct.[4] It is first necessary to determine whether the trial court properly found that American did not act willfully.

---

is a "bona fide occupational qualification," or where differentiation is based on "reasonable factors other than age." 29 U.S.C. § 623(f)(1). In the instant case, American does not dispute that it violated the ADEA if the court's instructions to the jury were correct. The issues on this appeal involve recoverable damages, and trial court jury instructions.

**2.** As codified, the Act provides in 29 U.S.C. § 626(b):

> (b) The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section. Before instituting any action under this section, the Secretary shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion.

**3.** 29 U.S.C. § 216(b) provides:

> (b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

**4.** The parties stipulated to a judicial determination of liquidated damages, although the right to a jury trial on ADEA damage issues has largely been settled by *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

## B. The Willfulness Standard

The apparently automatic provision for liquidated damages in 29 U.S.C. § 216(b) is modified by 29 U.S.C. § 626(b), providing that such damages will only be awarded "in cases of willful violations of this chapter . . . ." Neither the Act nor its legislative history defines "willful." Kelly contends that the test applied by the district court places too high a burden on ADEA plaintiffs.

The court below stated that for a willful violation, "there must be proof that defendant intentionally and knowingly fired plaintiff, with the knowledge that their acts had implications under the Age Discrimination in Employment Act." Because Kelly presented no evidence of American's knowledge of ADEA implications, liquidated damages were denied. The district court relied on *Hays v. Republic Steel Corp.*, 531 F.2d 1307 (5th Cir. 1976), in support of the conclusion that a defendant must have knowledge of ADEA implications for a plaintiff to recover liquidated damages.[5]

In fact, the *Hays* court did not consider or decide this question. The only reference to the issue in the court's opinion is a quote from the trial court which cited *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). *Coleman* required knowledge of implications under the FLSA to show willfulness. The *Coleman* court, however, was not interpreting the term "willful" in the liquidated damage provision of 29 U.S.C. § 626(b), but was concerned with 29 U.S.C. § 255(a), which establishes the statute of limitations for FLSA actions. The limitation period is two years unless the employer's actions are willful, in which case the limitation period is three years.

*Coleman* is not on point here. The statute of limitations interpreted in *Coleman* is designed to prevent an employer with knowledge of FLSA from delaying a lawsuit by misleading its employee as to his or her rights. *See Brennan v. Heard*, 491 F.2d 1, 3 (5th Cir. 1974). The employer would only have reason to mislead or delay an employee when it knew that its actions were possibly violative of an employment act.[6]

In contrast the award of liquidated damages is in effect a substitution for punitive damages and is intended to deter intentional violations of the ADEA. *Dean v. American Security Insurance Co.*, 559 F.2d 1036, 1039–40 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Douglas v. American Cyanamid Co.*, 472 F.Supp. 298, 303 (D.C.Conn.1979). Courts awarding liquidated damages have not required proof of an employer's knowledge of the Act, but have looked only to the knowing and voluntary nature of the violation. *Buchholz v. Symons Manufacturing Co.*, 445 F.Supp. 706, 713 (E.D.Wis.1978) (willfulness found because violation was "intentional, knowing and voluntary"); *Rogers v. Exxon Research & Engineering Co.*, 404 F.Supp. 324, 334 (D.N.J.1975), *rev'd on other grounds*, 550 F.2d 834 (3d Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978) ("careless disregard" of whether employer had a right to act as it did).

A version of the "knowing and voluntary" standard was recently adopted in a well-reasoned opinion of the Third Circuit.

---

5. We are aware of only two other decisions which might imply such a standard. In *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1020 n.27 (1st Cir. 1979), the court cited a jury instruction handbook which suggests that some form of "specific intent" to disregard the law is required. However, the precise issue was not before the court. The only other liquidated damage case we can find that requires something beyond "knowing and voluntary" is *Coates v. National Cash Register Co.*, 433 F.Supp. 655, 664 (W.D. Va.1977). As discussed in the text most courts

that have discussed the issue have only required a knowing and voluntary violation.

6. Most courts interpreting the term "willful" in the statute of limitations context have required knowledge of the implications under FLSA or ADEA. *Olsen v. Southern Pac. Transp. Co.*, 480 F.Supp. 773, 778–79 (N.D.Cal.1979); *Bishop v. Jelleff Assoc.*, 398 F.Supp. 579, 593 (D.D. C.1974). This interpretation is consistent with the FLSA because § 255 is designed to prevent an employer with knowledge of the FLSA from delaying an employee's lawsuit.

*Wehr v. Burroughs Corp.*, 619 F.2d 276 (3d Cir. 1980). The *Wehr* court upheld an award of liquidated damages based on a jury instruction that the employer must act "deliberately, intentionally, and knowingly."[7] The court noted that "willful" is subject to many interpretations, and stressed the importance of a lower standard for civil, as opposed to criminal, statutes using the term. 619 F.2d at 282 (no specific intent should be required); *accord Hodgson v. Hyatt*, 318 F.Supp. 390 (N.D.Fla.1970).

▉▉▉▉ American argues that a lower standard than that imposed by the trial court, such as the *Wehr* approach, would render liquidated damages automatic.[8] This argument ignores the fact that an employer's act may still violate the ADEA, and not be knowing and voluntary. *See Walker v. Pettit Construction Co.*, 605 F.2d 128, 131 (4th Cir.), *modified sub nom., Frith v. Eastern Air Lines, Inc.*, 611 F.2d 950 (1979). To establish a prima facie case of age discrimination, a plaintiff need only prove:

> (1) his membership in the protected class, (2) his discharge, (3) his qualifications for the position, and (4) his replacement by one outside the protected class.

*Houser v. Sears, Roebuck & Co.*, 627 F.2d 756, 757 (5th Cir. 1980). Thus, in order to establish a basis for liability there is no requirement that a plaintiff introduce evidence of the defendant's state of mind.[9]

Furthermore, proof sufficient to establish a prima facie case of age discrimination does not necessarily establish the same inference of improper motive as under a Title VII disparate treatment case.

> [T]he aging process causes employees constantly to exit the labor market while younger ones enter, simply the replacement of an older employee by a younger worker does not raise the same inference of improper motive that attends replacement of a black by a white person in a Title VII case.

*Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 736 (5th Cir. 1977). The fact that Congress provided for special remedies in the case of willful violations implies that an employee can recover for accidental and unintended violations of the ADEA as well as those that are knowing or intentional. *Smith v. University of North Carolina*, 632 F.2d 316, 337 (4th Cir. 1980).

▉▉▉ To require "knowledge of implications under the Act" could have the anomalous effect of encouraging employers to know as little as possible about the ADEA so that they would not be liable for liquidated damages. We conclude that the standard expressed by the Third Circuit in *Wehr* will best effectuate the purposes of ADEA, and hold that an ADEA plaintiff who establishes a knowing and voluntary violation of the Act is entitled to liquidated damages under 29 U.S.C. §§ 216(b) and 626(b).

---

7. *Wehr v. Burroughs Corp.*, 619 F.2d 276, 280 (3d Cir. 1980). The *Wehr* court stated, in dicta, that even the quoted instructions established too high a standard, and that reckless violations should also give rise to liquidated damages liability. *Id.* at 283. We decline to extend the punitive provision of double recovery beyond knowing violations.

8. *See* Smith & Leggette, Recent Issues in Litigation Under the Age Discrimination in Employment Act, 41 Ohio St.L.J. 349, 369 (1980) (hereinafter cited as "Smith & Leggette").

9. Kelly introduced sufficient statistical evidence to establish a prima facie case. This evidence consisted of three exhibits, prepared by American in response to interrogatories, which listed each member of the sales force, their ages and dates of service, and those employees terminated as a result of the hydronics plant closure. A plaintiff can rely on statistical evidence alone to establish the discriminatory impact of an employer's selection criteria. *Geller v. Markham*, 635 F.2d 1027 (2d Cir. 1981).

Statistical proof of discrimination is often the only evidence available to a discharged employee. *Cf. Teamsters v. United States*, 431 U.S. 324, 329, 97 S.Ct. 1843, 1851, 52 L.Ed.2d 396 (1977). It is not necessary to show that the ADEA violation was "conscious." "[T]he ADEA is designed to eradicate both conscious and unconscious stereotypes about the abilities of older workers. The proscriptions of the Act are not limited to employers who know that age is the reason why they are treating older workers unfavorably." Smith & Leggette, *supra*, note 8, at 371 (footnotes omitted).

In addition to statistical evidence, Kelly testified to discriminatory statements made by American's employees. Both types of evidence might establish willfulness under a "knowing and voluntary" standard, entitling him to liquidated damages. On the other hand the trial court might find that the discrimination was inadvertent. *See Smith v. University of North Carolina*, 632 F.2d 316, 337 (4th Cir. 1980). We must therefore remand to the district court to determine the availability of liquidated damages under the standard we have approved.

C. The Good Faith Defense

As an alternative ground for denying liquidated damages, the trial court found that the good faith defense in section 11 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 260, applies to ADEA actions, and was met by American because it had business justifications for the termination. 29 U.S.C. § 260 provides in part:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

The ADEA incorporates the enforcement scheme of FLSA by referring specifically to sections 211, 216 and 217; it does not refer to the Portal-to-Portal Act. The Portal-to-Portal Act was enacted sometime before the ADEA. If Congress had intended section 11 of the Act, 29 U.S.C. § 260, to apply in ADEA actions it seems clear that it would also have been specifically incorporated by reference in § 626(b). Nevertheless, several courts have held that section

260 should apply to the ADEA as well as to the FLSA. *Hays v. Republic Steel Corp.*, 531 F.2d 1307 (5th Cir. 1976); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841 (W.D.Okl.1976). The trial judge in the instant case relied on *Hays* in applying the defense.

The rationale of the courts allowing the defense is that the ADEA should incorporate all of the FLSA remedies. The *Hays* court also expressed concern over automatically providing for liquidated damages, preferring trial court discretion. 531 F.2d at 1311. At the time of trial, *Hays* was the only circuit court case that had addressed this issue and the district courts were split.[10]

The two most recent cases to consider the issue, noting that *Hays* is the only appellate authority to the contrary, hold that the good faith defense of § 260 is not available. *Wehr v. Burroughs Corp.*, 619 F.2d 276, 279 (3d Cir. 1980); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1020 (1st Cir. 1979). Under section 216(b), the applicable FLSA provision, there is no requirement of willfulness as a predicate to an award of liquidated damages. On the other hand, the ADEA requires a finding of willfulness for liquidated damages. 29 U.S.C. § 626(b). The *Loeb* court reasoned that the "willfulness" requirement specifically added to the ADEA indicates that the good faith defense is not necessary:

> [U]nder 29 U.S.C. § 216(b), standing alone, liquidated damages must be awarded once a violation is shown. Section 11 [29 U.S.C. § 260] mitigates this result in FLSA cases [citations]. In ADEA cases, the "willfulness" test serves the same function and renders Section 11 superfluous.

600 F.2d at 1020.

■ The *Loeb* analysis is supported by the recent Supreme Court decision estab-

---

**10.** Several district courts have held that the defense is not applicable in ADEA actions, because § 260 was not incorporated into § 626(b). *Rechsteiner v. Madison Fund, Inc.*, 75 F.R.D. 499, 504–05 (D.Del.1977); *Cleverly v. Western Electric Co.*, 69 F.R.D. 348, 352 (W.D.Mo.1975).

*But see McGregor v. CCH Computax, Inc.*, 463 F.Supp. 1215, 1216 (C.D.Cal.1979) (applying the defense without discussing its reasoning); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841, 844 (W.D.Okl.1976).

lishing the right to jury trials in ADEA actions. *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). The Court stated that "[a]lthough § 7(e) of the ADEA, 29 U.S.C. § 626(e), expressly incorporates §§ 6 and 10 of the Portal-to-Portal Pay Act [29 U.S.C. §§ 255 and 259] . . ., the ADEA does not make any reference to § 11, 29 U.S.C. § 260 . . . ."[11] We find this reasoning persuasive and hold that the good faith defense to liquidated damage recovery is not applicable in ADEA actions. There would be little purpose in allowing an employer who has willfully violated the ADEA to show that it nevertheless acted in "good faith." Indeed, it is hard to imagine a situation where a court could find a willful violation to still be in good faith. *Loeb*, 600 F.2d at 1020. Therefore upon remand the district judge should apply the willfulness standard discussed above, and ignore the good faith defense in 29 U.S.C. § 260.

## II. PREJUDGMENT INTEREST

The ADEA empowers a court "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter . . . ." 29 U.S.C. § 626(b). On this basis, the district court awarded Kelly prejudgment interest on his $27,000 lost income and pension recovery, at the rate of eight percent from the date of discharge. Kelly concedes that the court improperly used an eight percent rate, and that the correct rate should be six percent under the Washington statute. Because the rate is not disputed, we will assume that the parties are correct and we apply the six percent rate.[12]

■ There is ample authority supporting awards of prejudgment interest in FLSA cases. *McClanahan v. Mathews*, 440 F.2d 320, 324–26 (6th Cir. 1971); *Holtville Alfal-*

fa *Mills v. Wyatt*, 230 F.2d 398, 401 (9th Cir. 1955). FLSA cases involve recovery for labor previously performed. An ADEA claim, on the other hand, requires reimbursement for wages lost after termination of employment. Under the provisions of 29 U.S.C. § 626(b), however, any amounts recoverable under ADEA are "deemed to be unpaid minimum wages or unpaid overtime . . . [as in FLSA]." Therefore, the FLSA cases are directly applicable; Kelly's lost wages were accrued and owing by virtue of section 626(b). *See Hodgson v. First Federal Savings & Loan Ass'n*, 455 F.2d 818, 820 (5th Cir. 1972). In assuring equitable relief under the ADEA, the loss of use of this money during the period payments were withheld from Kelly should be compensated by payment of interest.

American contends that Washington law precludes interest recovery because at time of trial, Kelly's recovery was not "liquidated." *See Boeing Co. v. State*, 89 Wash.2d 443, 572 P.2d 8, 14–15 (1978); *Prier v. Refrigeration Engineering Co.*, 74 Wash.2d 25, 442 P.2d 621, 626 (1968). The trial court granted interest only on Kelly's pecuniary wage and pension loss of $27,000, not on the more speculative element of damage for emotional distress. Federal case law provides a set formula for determining back wages and other pecuniary damages in an ADEA case; the award is not left entirely to the jury's subjective opinion. *Loeb v. Textron*, 600 F.2d 1003, 1021 (1st Cir. 1979). Therefore, even if Washington law applied we would conclude that the claim was liquidated. But in any event it is not necessary to address American's state law contentions because prejudgment interest is allowable under federal law. The award of interest was proper, and serves to furnish Kelly an

---

11. *Lorillard v. Pons*, 434 U.S. 575, 581 n.8, 98 S.Ct. 866, 870 n.8, 55 L.Ed.2d 40 (1978). *See also* Smith & Leggette, *supra*, note 8, at 369 n.182.

12. The district court apparently applied the 8% rate because of Wash.Rev.Code Ann. § 4.56.110 (Supp.1980), providing for *post*-judgment interest (from the date of entry). The general 6%

rate in Wash.Rev.Code Ann. § 19.52.010 should apply in lieu of a more specific statute. Because the parties have agreed on 6%, we need not determine whether it was appropriate to look to the state statute when the award of interest itself is based on the "equitable relief" language in the federal statute. 29 U.S.C. § 626(b).

equitable recovery for his lost wages and pension benefits.[13]

## III. DAMAGES FOR EMOTIONAL DISTRESS

■ At trial, the jury awarded Kelly $15,000 for emotional distress caused by American's termination. The federal district courts are in conflict over the availability of compensatory damages such as emotional distress in an ADEA action, although the circuit courts which have addressed this issue have uniformly denied recovery.[14] Emotional distress, however, is an appropriate element of damage recovery under the Washington State Law Against Discrimination, upon which the jury was instructed. Wash.Rev.Code Ann. § 49.60 (Supp.1980). We therefore affirm the award on the basis of Kelly's pendent state

law claim, and do not consider the scope of available compensatory claim damages under the ADEA.

The Washington statute provides that a person "injured by any act in violation of this chapter shall have a civil action . . . to recover the actual damages sustained by him . . . ."[15] A recent Washington case, interpreting this language in a sex discrimination case, held that actual damages include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Ellingson v. Spokane Mortgage Co.*, 19 Wash.App. 48, 573 P.2d 389, 394 (1978) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974) (defamation case)). There is no reason why the Washington discrimination law should be

13. The broad equitable relief language in section 626(b) has been used by some district courts as justification for awards of punitive damages or emotional distress recovery. Other courts, however, have held that the apparently broad language of § 626(b) is limited to relief related to the pecuniary damages specifically provided for under ADEA and FLSA. *Slatin v. Stanford Research Institute*, 590 F.2d 1292, 1296 (4th Cir. 1979); *see* cases in note 14 *infra*.

An award of prejudgment interest is justified under either interpretation because the equitable relief phrase of section 626(b) is directly followed by authorization for back pay under section 216. Prejudgment interest merely protects the value of authorized backpay pending trial.

14. We are not aware of any circuit court allowing recovery under ADEA for emotional distress. District courts granting such recovery generally rely on the equitable relief phrase in 29 U.S.C. § 626(b). *See* note 13 *supra*. A partial list of district court cases allowing recovery for emotional distress or punitive damages includes: *Wise v. Olan Mills, Inc.*, 485 F.Supp. 542, 544 (D.Colo.1980); *Hassan v. Delta Orthopedic Medical Group, Inc.*, 476 F.Supp. 1063, 1065 (E.D.Cal.1979); *Morton v. Sheboygan Memorial Hosp.*, 458 F.Supp. 804, 807 (E.D.Wis.1978); *Kennedy v. Mountain States Tel. & Tel. Co.*, 449 F.Supp. 1008, 1009–11 (D.Colo.1978); *Buchholz v. Symons Mfg. Co.*, 445 F.Supp. 706, 713–14 (E.D.Wis.1978); *Bertrand v. Orkin Exterminating Co.*, 419 F.Supp. 1123, 1132–33 (N.D.Ill.1976). *See also* Smith & Leggette, *supra*, note 8, at 366–68.

The four circuits that have addressed the issue have all denied recovery for emotional distress, reasoning that the statutory scheme of

reinstatement, lost wages and benefits, liquidated damages and attorney fees is sufficient to make the plaintiff whole. *See Wehr v. Burroughs Corp.*, 619 F.2d 276, 284 (3d Cir. 1980); *Walker v. Pettit Const. Co.*, 605 F.2d 128, 129–30 (4th Cir. 1979); *Slatin v. Stanford Research Inst.*, 590 F.2d 1292, 1296 (4th Cir. 1979), *modified sub nom.*, *Frith v. Eastern Air Lines, Inc.*, 611 F.2d 950 (1979); *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir. 1978); *Rodriguez v. Taylor*, 569 F.2d 1231, 1241 (3d Cir. 1977); *Dean v. American Sec. Ins. Co.*, 559 F.2d 1036, 1038–39 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Eng'r Co.*, 550 F.2d 834, 839–42 (3d Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).

For district courts denying recovery, *see Douglas v. American Cyanamid Co.*, 472 F.Supp. 298, 303 (D.Conn.1979); *Riddle v. Getty Ref. & Mkt'g Co.*, 460 F.Supp. 678, 680 (N.D.Okl.1978); *Ellis v. Phillipine Airlines*, 443 F.Supp. 251, 252 (N.D.Cal.1977); *Fellows v. Medford Corp.*, 431 F.Supp. 199, 202 (D.Or. 1977); *Sant v. Mack Trucks, Inc.*, 424 F.Supp. 621, 622 (N.D.Cal.1976).

15. Wash.Rev.Code Ann. § 49.60.030(2) (Supp. 1980). One of the specified violations in the chapter is the "discharge or bar [of] any person from employment because of such person's age . . . ." Wash.Rev.Code Ann. § 40.60.180(2) (Supp.1980) (unfair practices of employer defined). Therefore, violation of this provision brings into play the civil remedy for "actual damages" in Wash.Rev.Code Ann. § 49.60.-030(2) (Supp.1980). *See Sarruf v. Miller*, 90 Wash.2d 794, 586 P.2d 466, 468 (1978).

interpreted any differently in an age discrimination case; the remedial provision of Wash.Rev.Code Ann. § 49.60.030(2) (Supp. 1980) is the same for age discrimination as well as sex discrimination under Washington's statutory scheme. The nature and amount of recovery are questions of fact,[16] therefore the district court did not err in leaving the award of damages for emotional distress to the jury.

## IV. JURY INSTRUCTIONS AND VERDICT

American challenges several aspects of the district court jury instructions.

### A. Age As A Determining Factor

In jury instruction 9, the judge stated that the plaintiff has the burden of proving that "one of the reasons he was terminated was because of his age . . . ," and that he should prevail if this factor "made a difference in determining whether or not the plaintiff was retained or discharged." The judge relied on *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir. 1975), which first established the "determining factor" test.

 American argues that *Laugesen* is an incorrect interpretation of the ADEA and that age must be the *sole* factor. It contends that otherwise 29 U.S.C. § 623(f)(1), which provides that it shall not be unlawful to take otherwise prohibited actions "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age," would be superfluous. American, however,

ignores the fact that age may be one of many "reasonable factors" but not a determining one. The relationship between the defense in section 623(f)(1) and the determining factor test was recently examined by the Fourth Circuit.

Such a prima facie showing [by the employee-plaintiff] is rebutted if the employer shows a legitimate non-discriminatory reason for the employee's discharge. [citations]

After the employer has come forward with such evidence, the ultimate burden of persuasion remains upon the plaintiff to show that age was a determining factor in his discharge.

*Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir. 1980) (footnote omitted); *see* 29 C.F.R. § 860.103(c) (1980). Only when age is a determining factor in the discharge will the ADEA be violated, and in such a case any other factors under section 623(f)(1) will be irrelevant.

In this case American contended that Kelly was selected for termination because he was the least effective member of the sales force, and not because of his age. If the jury had so found, the discharge of Kelly would have been based on a reasonable factor other than age. Whether age was a determining factor was a question of fact to be resolved by the jury. *Smith*, 618 F.2d at 1066; 29 C.F.R. § 860.103(b)–(d).

We agree with the recent First Circuit case reaffirming a "determining factor" or "but for" test as proper under the ADEA. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1019 (1st Cir. 1979). To require an ADEA plaintiff to prove that age was the sole factor

**16.** American contends that the pain and suffering award should nevertheless be reversed because the trial judge did not instruct the jury on the standard for granting such recovery under Washington law. The instruction merely stated that a verdict for Kelly "should include . . . (4) Emotional distress." American's proposed instruction required a showing of "outrageous and extreme conduct" by the defendant.

The two cases American cites for this high standard, however, establish the elements of a prima facie case for the common law tort of outrage, and do not involve damage recovery under a statutory tort. *Contreras v. Crown*

*Zellerbach Corp.*, 88 Wash.2d 735, 565 P.2d 1173 (1977); *Grimsby v. Samson*, 85 Wash.2d 52, 530 P.2d 291 (1975). We are not aware of any Washington case holding that an additional showing to recover for emotional distress is required for a statutory violation.

Although the award was based solely on the testimony of Kelly and his wife, the jury was competent to weigh the credibility of these witnesses; apparently they were persuasive. There is no merit to American's contention that a $15,000 award was excessive, in light of $33,500 pecuniary damages.

would impose an intolerable burden; "business" justifications for discharge can always be asserted. Jury instruction 9 set forth the same test as that endorsed by *Laugesen* and *Loeb*, and a stricter test is not warranted under the ADEA or interpretive case law.[17]

### B. "Reasonable Factors" Instruction

American contends that the trial judge should have included defendant's proposed instruction 5, which stated that a discharge is not unlawful if "for good cause or where the discharge or classification is based on reasonable factors other than age." This instruction is an appropriate paraphrasing of the "reasonable factors" exception in 29 U.S.C. § 623(f)(1), but was unnecessary in this case because jury instruction 9 included the same language. There is no reason that this exception merits highlighting in a separate instruction.[18]

### C. Instruction On The Weight Of Kelly's Testimony

▪▪▪ As a further assignment of error, American contends that the trial judge should have included defendant's proposed jury instruction 16, which stated that a party's testimony on alleged out of court admissions should be "considered with caution and weighed with great care." Given the inherently self-serving nature of Kelly's testimony, such an instruction may have been appropriate. However, failure to include the instruction was not error.

The jury was carefully instructed on its fact-finding function, and was competent to weigh the veracity of Kelly's statements with the testimony of other witnesses. Jury instruction 8, 14, and 16 covered the preponderance of the evidence standard, plaintiff's burden of proof, the veracity of witness testimony, and factors to consider in weighing testimony, including motive and state of mind. Instruction 16 specifically asked the jury to "[c]onsider also any relation each witness may bear to either side of the case; [and] the manner in which each witness might be affected by the verdict . . . ." Taken as a whole, the jury instructions were not misleading or unfair to American. *Laugesen*, 510 F.2d at 315.

### D. Reduction In The Verdict To Conform To The Evidence

▪▪▪ The jury award of pecuniary damages was slightly higher than the figures testified to by Kelly's expert witness, Dr. Barnes. Barnes calculated Kelly's income loss at $24,541.87, his pension loss at $1,241.51, and his business start-up costs at $6,248.50, for a total of $32,031.88. The jury awarded Kelly $25,000, $2,000, and $6,500 respectively, for a total of $33,500. The jury apparently accepted Dr. Barnes' testimony, and rounded each figure up to an even amount, resulting in a total discrepancy of $1,462.12 between the testimony and the verdict.

This discrepancy does not mean that the verdict was inconsistent with the testimony, however. Barnes never claimed that his figures on the income and pension losses were exact. His total estimate of $25,-783.38 for these two items was based on a "conservative" average yearly increase of 4.8%, which he testified could have been as

---

17. The strong weight of authority supports some formulation of the determining factor test. *See Smithers v. Bailar*, 629 F.2d 892, 896–97 (4th Cir. 1980); *Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir. 1980); *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1019 (1st Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 53 L.Ed.2d 762 (1980) (ADEA and Title VII); *Cleverly v. Western Elec. Co.*, 594 F.2d 638, 641 (8th Cir. 1979); *Olsen v. Southern Pac. Transp. Co.*, 480 F.Supp. 773, 779 n.4 (N.D.Cal. 1979). *See also* Smith & Leggette, *supra*, note 8, at 371–72. *But see Brennan v. Reynolds & Co.*, 367 F.Supp. 440, 444 (N.D.Ill.1973).

18. Although inclusion of American's proposed language in a separate instruction would have been proper, exclusion was equally proper. The jury instructions as a whole included the elements of a prima facie case under ADEA, as well as applicable defenses and exceptions. "If the judge's instructions properly present the issues and the law as applicable, it is no ground for complaint that certain portions, taken by themselves and isolated, may appear to be ambiguous, incomplete, or otherwise subject to criticism." *Laugesen v. Anaconda Co.*, 510 F.2d 307, 315 (6th Cir. 1975).

high as 8.35%.[19] Therefore, the jury award of $27,000 for these two amounts was well within the range of the expert testimony. This uncertainty was not present for Barnes' estimate of business start-up costs, and Kelly has conceded that the award of $6,500 should be reduced to $6,248.50. The jury verdict is therefore affirmed, with a $251.50 reduction to conform to the testimonial evidence.[20] We find the instructions to be an accurate and complete statement of the relevant law and affirm the jury verdict of ADEA discrimination, with the minor modification above.

## V. ATTORNEY FEES ON APPEAL

 Kelly has requested this court to award attorney fees for successful prosecution of this appeal.[21] Although there is a statutory authorization for trial level attorney fees in the ADEA, a grant of fees on appeal is in the discretion of the appellate court. *Cleverly v. Western Electric Co.*, 594 F.2d 638, 643 (8th Cir. 1979). It is clear that such an award is available in an FLSA case, and for the same reasons is appropriate in an ADEA case. *Montalvo v. Tower Life Building*, 426 F.2d 1135, 1150 (5th Cir. 1970) (FLSA); *see also Rodriguez v. Taylor*, 569 F.2d 1231, 1250 n.34 (3d Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978) (remand to trial court to determine proper amount in an ADEA case). An appellate court should grant attorney's fees on appeal in an ADEA case when the complexity of the issues and the time necessary to master those issues warrants reimbursement to the prevailing party. *Montalvo*, 426 F.2d at 1150.

We find substantial merit in Kelly's request. After successfully challenging American's discharge at the trial level, he has defended the verdict on appeal and convinced this court to remand for a redetermination of liquidated damages. Many of the issues raised on this appeal involve complex questions of first impression in this circuit. We therefore grant Kelly's request for appellate attorney fees, but remand to the district court to determine the appropriate amount. In making this determination, the district court should consider the number of hours spent in preparation, the experience of the attorneys, the number and complexity of the issues, and the degree of wasted or duplicative effort. *See generally Rodriguez*, 569 F.2d at 1247–50; *Wehr v. Burroughs Corp.*, 477 F.Supp. 1012 (E.D.Pa. 1979), *aff'd as modified*, 619 F.2d 276 (3d Cir. 1980). We also believe that consideration should be given to the customary fees charged for equivalent litigation services in the community. *Rodriguez*, 569 F.2d at 1248 (fee calculation for legal service attorneys); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974).

## CONCLUSION

The district court's jury instructions were an accurate reflection of the law, and provided adequate guidance for a fair verdict. Furthermore, although recovery of damages for emotional distress is unclear under

---

19. Dr. Clarence Barnes, an economics professor, was the only expert offered by either party on the issue of damages. He based his calculations on Kelly's tax returns, interrogatories from both parties, copies of American's pension program, and Kelly's past sales and earning experience. On direct examination, he testified to Kelly's projected salary increase as follows:

> Well, I took earnings increases from 1967 through 1974, for the 4.8[%]. Now, that was, I also applied that same procedure to total earnings increases from 1962 through 1974, and then 1970 through 1974, and found that those were, I believe, 8.35[%] increase per year, and 6.11 percent increase per year, so I chose the smaller of the three, to be conservative.

20. American also contends that the jury instruction regarding Kelly's life insurance and vested pension rights was irrelevant and prejudicial, possibly influencing the jury to inflate the verdict. This contention is not well taken; American stipulated to these facts as admitted in the pretrial order, and cannot now contest them. Furthermore, pension rights and fringe benefits are proper elements of damage under the ADEA, and their present value is recoverable based on expert testimony. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1021 (1st Cir. 1979).

21. Kelly was awarded $14,000 in attorney fees for his successful litigation below, under authority of 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 216(b). This award is not challenged on appeal.

the ADEA, Washington state law allows for such recovery. Therefore, we affirm the jury verdict in its entirety, with a reduction in the business start-up award from $6,500 to $6,248.50 in order to conform to the testimonial evidence.

The district court award of prejudgment interest was a proper form of equitable relief and is affirmed as modified to a six percent rate. We find, however, that the court below applied too high a standard in denying liquidated damages and remand for a redetermination under a "knowing and voluntary" standard of willfulness. Finally, we find that Kelly is entitled to an award of attorney fees for successful prosecution of this appeal, and remand to the district court to determine the appropriate amount.

AFFIRMED IN PART, REVERSED and REMANDED IN PART.