Lynn McKELVY, Plaintiff,

v.

METAL CONTAINER CORPORATION, a Delaware Corporation, Defendant.

No. 83–522–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

July 6, 1987.

James C. Rinamen, Jr., Tracey I. Arpen, Jr. and Linda C. Ingham, Jacksonville, Fla., for plaintiff.

Peter Reed Corbin and John F. Dickinson, Jacksonville, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MELTON, District Judge.

## I. INTRODUCTION

This is an employment discrimination action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, in which plaintiff Lynn McKelvy alleges that defendant Metal Container Corporation discriminatorily discharged him on April 27, 1981, on the basis of his age. Plaintiff's original complaint was filed on April 21, 1983, and on February 3, 1987, following a five-day trial, the jury returned a special verdict finding that age was "a determining factor" in defendant's decision to terminate plaintiff.

Prior to trial, the parties stipulated as to the amount of back pay and incentive bonuses (less interim earnings) that plaintiff would have received had he remained employed with defendant. Stipulation dated January 26, 1987 ("Stipulation"). The parties further agreed that the issues of reinstatement, front pay, pension benefits, fringe benefits, prejudgment interest and attorney fees and costs should be reserved for the Court's determination in a proceeding subsequent to the jury trial. Stipulation ¶ 15. Accordingly, the Court entertained post-trial memoranda, affidavits and oral argument on these issues. Upon consideration of all of the matters tendered by the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

### BACK PAY

1. Plaintiff's net back pay from defendant for the period April 27, 1981, until January 31, 1987, is as follows:

| | |
|---|---|
| 1981 | $ 16,988.00 |
| 1982 | 36,630.00 |
| 1983 | 43,711.00 |
| 1984 | 52,848.00 |
| 1985 | 35,674.00 |
| 1986 | 32,619.00 |
| 1987 | 2,971.00 |
| TOTAL | $221,441.00 |

Stipulation, ¶ 9.

2. Plaintiff received unemployment compensation from 1981 to 1987 totalling $4,969. Stipulation, ¶ 11.

3. Plaintiff would have received $37,657.27 from defendant in incentive bonuses from 1981 to 1987. Stipulation, ¶ 10.

4. Plaintiff adequately met his burden of mitigating damages. Stipulation, ¶ 14.

### REINSTATEMENT

5. Plaintiff initially asked for reinstatement in his amended complaint.

6. There has been no evidence offered which would indicate that defendant is unwilling or unable to reinstate plaintiff to his prior position were the Court to so order. Indeed, counsel for defendant stated in his argument that defendant was ready, willing and able to effect reinstatement.

7. The principal individuals involved in discharging plaintiff are no longer employed at defendant's Jacksonville plant.

8. While Frank Lee, Herb Ellerbe and John Crossman (witnesses who testified at trial) are still employed by defendant, they would work in subordinate positions on the plant management team with plaintiff if plaintiff were reinstated to his former position as Shift Superintendent.

9. Gary Reynolds left the Jacksonville plant in 1981 to become Plant Manager of defendant's Gainesville, Florida, plant. Likewise, Arnold Rodgers left the Jackson-

ville plant in 1985 and is now in St. Louis, Missouri, at the corporate administrative level. Affidavit of Donald H. Dupree.

10. Donald H. DuPree, Employee Relations Manager at the Jacksonville plant, remains employed by defendant but in his position would not directly supervise plaintiff. Mr. DuPree holds no personal hostility toward plaintiff. *Id.*

11. Bill Mathey, former Plant Manager, was the individual with most direct responsibility for plaintiff's termination. Mathey retired on disability in 1982 and is no longer involved in plant management. *Id.*

PENSION BENEFITS

12. At the time of plaintiff's discharge, he had no vested rights in the Anheuser–Busch Salaried Employees Pension Plan. No such right would have vested unless he had worked for defendant for approximately three (3) more years. Affidavit of Richard A. Schwartz.

13. Were the Court to award plaintiff pension benefits, the Anheuser–Busch Pension Plan provides that plaintiff could, in effect, be reinstated as a participant in that Plan with credited service from his original date of participation in the Plan through January 31, 1987. *Id.*

14. Plaintiff will achieve vested rights in the Crown Cork and Seal pension plan at age 65. Affidavit and trial testimony of Lynn McKelvy.

HEALTH AND DISABILITY INSURANCE PREMIUMS

15. As part of his back pay award, plaintiff sought an award for health and disability insurance premiums. The parties stipulated that the cost of such insurance to defendant between 1981 and January 31, 1987, was $8,758. Stipulation, ¶ 13.

16. Although plaintiff claims to have incurred medical expenses after his discharge, affidavit of Lynn McKelvy, he has presented the Court with no proof of the amount of such expenses which would support an equitable award of compensation for these expenses.

ATTORNEY FEES

17. In support of an award of attorney fees in this case, plaintiff has submitted the following breakdown of attorney hours and corresponding rates:

| ATTORNEYS | HOURS | RATE | FEE |
|---|---|---|---|
| Rinaman | 123.3 | $200 | $ 24,660.00 |
| Arpen | 129 | $125 | $ 16,125.00 |
| Wood | 322.9 | $100 | $ 32,290.00 |
| Ingham | 128 | $ 70 | $ 8,960.00 |
| Barker | .3 | $125 | $ 37.50 |
| Burns | .6 | $125 | $ 75.00 |
| Paralegal | 113.6 | $ 65 | $ 7,384.00 |
| TOTAL | 817.7 | | $ 89,531.50 |

18. Upon review of plaintiff's affidavit on the matter of attorney fees in this case, the Court finds that eight hundred thirteen point six hours (813.6) were reasonably expended in prosecution of this case. The Court arrived at this figure by taking the total number of hours submitted by plaintiff—817.7—and subtracting four point one hours (4.1), representing inaccuracies pointed out by defendant.

19. This case presented a novel and difficult preliminary issue on the timeliness of plaintiff's claim. This issue was ultimately resolved by a decision of the Eleventh Circuit in an analogous case, *Thomas v. Florida Power & Light Co.*, 764 F.2d 768 (11th Cir.1985).

20. Attorneys for plaintiff put forth the effort to properly represent plaintiff as demonstrated by the pleadings, trial preparation and conduct of the trial. They displayed the requisite skill to perform the legal service properly.

21. In so much as this case lasted for four years, and that plaintiff's counsel often represents defendants in age discrimination cases, affidavit of James C. Rinaman, Jr., plaintiff's attorneys may have been precluded from other employment due to acceptance and work on this case.

22. Based on the prevailing market rate in Jacksonville as established by the affidavits of James C. Rinaman, Jr., and John MacLennan, the reasonable hourly rate of James C. Rinaman, Jr., is $200 per hour; for Tracey I. Arpen, $125 per hour; for Mary C. Wood, $100 per hour; and $70 per hour for other associates' time. Rates such as these are representative of fees

customarily charged in similar cases in this community by other attorneys. However, the Court does not believe that $65 per hour is a reasonable fee for the paralegal time involved in this case. The Court is of the opinion that $35 per hour is a more appropriate rate for this case. *See Ortega v. City of Kansas City*, 659 F.Supp. 1201 (D.Kan.1987).

23. This case was originally accepted on the basis of a low hourly rate against a one-third contingency fee if plaintiff prevailed at trial. However, plaintiff's attorneys carried all expenses and fees without compensation for approximately three years. It appears that if plaintiff had not prevailed at trial, plaintiff's attorneys would not have been reimbursed for costs or fees.

24. There were time limitations imposed by circumstances arising in plaintiff's attorneys' law firm. The attorney handling this case left the firm three weeks prior to the case going to trial.

25. There was a very close jury issue on liability, requiring careful presentation of evidence and strong advocacy to the jury. This case resulted in a large judgment for plaintiff in comparison to many age discrimination cases.

26. The hourly rates billed reflect a compensation differential based on experience, reputation and ability of the attorney.

## III. CONCLUSIONS OF LAW

### BACK PAY

1. Back pay awards serve the "make whole" objective of employment discrimination litigation. *See, e.g., Darnell v. City of Jasper*, 730 F.2d 653 (11th Cir. 1984). The ADEA's purpose is to put the victim of age discrimination back into the position he would have been in but for the unlawful discrimination. *Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114, 118 (4th Cir.1983). Based upon the finding of liability against defendant, plaintiff is entitled to back pay in this case in the amount of $221,441, as stipulated by the parties. Stipulation, ¶ 9.

2. Unemployment compensation benefits received from a state fund are not deductible from a Title VII backpay award. *Brown v. A.J. Gerrard Manufacturing Co.*, 715 F.2d 1549 (11th Cir.1983) (en banc). Given the analogous nature of Title VII and ADEA suits, the Court believes that the rationale of *Brown* applies to the ADEA as well as Title VII. Therefore, unemployment compensation received by plaintiff from 1981 until 1987, totalling $4,969, shall not be deducted from plaintiff's back pay award as interim earnings.

3. Plaintiff is entitled to $37,657.27 in incentive bonuses as stipulated to by the parties upon a finding of liability against defendant.

### PREJUDGMENT INTEREST

4. In assuring equitable relief under the ADEA, the loss of use of back pay wages should be compensated by payment of interest. *Kelly v. American Standard, Inc.*, 640 F.2d 974 (9th Cir.1981). The broad equitable powers conferred by 29 U.S.C. § 626(b) include the power to award prejudgment interest in appropriate cases. *Cline v. Roadway Express, Inc.*, 689 F.2d 481 (4th Cir.1982). Indeed, prejudgment interest may even be awarded where plaintiff also receives liquidated damages for a willful violation of the ADEA. *Lindsey v. American Cast Iron Pipe Company*, 810 F.2d 1094 (11th Cir.1987) (disavowing *O'Donnell v. Georgia Osteopathic Hospital, Inc.*, 748 F.2d 1543 (11th Cir.1984)).

5. Prejudgment interest can be withheld if the plaintiff fails to mitigate damages. *See Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149 (7th Cir.1981). In this case, however, the parties have stipulated that plaintiff adequately met the burden of mitigating damages.

6. The rate of prejudgment interest is generally based on the statutory interest rate under state law. *Criswell v. Western Airlines, Inc.*, 514 F.Supp. 384 (C.D.Calif.1981), *aff'd.*, 709 F.2d 544 (9th Cir.1983). *See also Kelly v. American Standard, Inc.*, 640 F.2d at 982. In Florida the prejudgment interest rate is 12%

per annum. Fla.Stat. § 55.03 (1985). A prejudgment interest award runs from the date of discharge to the entry of judgment. *Kelly,* 640 F.2d at 982.

■ 7. Plaintiff is entitled to prejudgment interest of 12% per annum, compounded on an annual basis, from April 27, 1981, through the date of judgment. Because this interest relieves the loss of use of back pay wages during the period payments are withheld from the employee, the award of prejudgment interest should apply to net back pay and incentive bonus awards, both of which plaintiff would have received from 1981 to 1987 but for the illegal termination. Prejudgment interest is awarded in the total amount of $104,667.05 ($86,697.58 dollars interest on net back pay and $17,969.47 interest on incentive bonus awards).

## REINSTATEMENT

■ 8. Almost every appellate court which has approved the concept of front pay has ruled that a plaintiff must either first seek reinstatement or must reasonably have refused an employer's offer of reinstatement to be entitled to front pay. *See, e.g., O'Donnell v. Georgia Osteopathic Hospital,* 748 F.2d 1543 (11th Cir.1984); (disavowed on other grounds, *Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094 (11th Cir.1987)); *Wehr v. Burroughs Corp.,* 619 F.2d 276 (3d Cir.1980).

9. Plaintiff has failed to meet his burden of proving that reinstatement is not a viable remedy in view of the circumstances of his treatment by defendant. Plaintiff's post-trial affidavit, which is the only evidence adduced by him on the issue of reinstatement, fails to sufficiently demonstrate why reinstatement should not be the preferred alternative in this particular litigation. The fact that this action proceeded to trial and was ardently contested by defendant does not, ipso facto, show that reinstatement is infeasible. Indeed, if that were the case, reinstatement would rarely, if ever, be an appropriate remedy.

10. In *O'Donnell,* the Eleventh Circuit, consistent with other courts, recognized that the equitable relief of reinstatement is the preferred and most desirable "make whole" remedy in a federal employment discrimination action. *O'Donnell,* 748 F.2d at 1551–52. *See* 29 U.S.C. § 626(b); and *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985) (denial of front pay affirmed where reinstatment was not found inappropriate). An employee does not have the power to select front pay as a remedy instead of reinstatement. Based on plaintiff's failure to prove that reinstatement is not viable, plaintiff is not entitled to front pay as an alternative to reinstatement. Plaintiff is, however, entitled to reinstatement to his former position with defendant should he wish to return to that job.

## HEALTH AND DISABILITY PREMIUMS

■ 11. No legal basis exists for plaintiff's claim for an award of health and disability insurance premiums. Plaintiff has not shown that he obtained alternate insurance coverage or that he suffered medical expenses that would have been covered under defendant's insurance plan. *Kossman v. Calumet Co.,* 800 F.2d 697 1355 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987). Consequently, his claim for health and disability benefits as part of his back pay award is denied.

## PENSION BENEFITS

■ 12. The Court finds that the relief most consistent with the "make whole" purpose of the ADEA is to order plaintiff reinstated to the Anheuser–Busch Salaried Employees Pension Plan, with full credited service and pension benefits as if he had not been discharged by defendant.

## ATTORNEY FEES

■ 13. Awards of attorney fees in age discrimination actions are governed by 29 U.S.C. § 216(b) which provides that "[t]he court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant...." *Jones v. Central Soya Company, Inc.,* 748 F.2d

586, 588 (11th Cir.1984). The standard to be followed in determining the basic fee or "lodestar," is a determination of the reasonable number of hours spent on the case multiplied by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

14. In determining the amount of attorney fees to be awarded herein, the Court has considered the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). For example, the Court has considered the time and labor required in such a case (Findings of Fact at ¶ 18); the novelty and difficulty of the questions presented (Findings of Fact at ¶ 20); the skill requisite to perform the legal service properly (Findings of Fact at ¶ 21); the preclusion of other employment due to the acceptance of the case (Findings of Fact at ¶ 22); prevailing or customary fees for such work (Findings of Fact at ¶ 23) and so forth. Based on consideration of these factors, the Court finds that attorney fees of $85,780.50 are reasonable.

15. As noted in ¶ 17 of the Findings of Fact, plaintiff submitted computer printouts showing 817.7 hours expended on this case. Counsel for defendant has pointed out certain inaccuracies in these records which the Court believes warrant a downward adjustment of 4.1 hours. In addition, the Court has determined that $35 per hour is reasonable for paralegal fees, rather than $65 as submitted by plaintiff. Taking into account these adjustments, the itemization of plaintiff's award is as follows:

| ATTORNEYS | HOURS | RATE | FEE |
| --- | --- | --- | --- |
| Rinaman | 122.7 | $200 | $ 24,540.00 |
| Arpen | 129 | $125 | $ 16,125.00 |
| Wood | 322.6 | $100 | $ 32,260.00 |
| Ingham | 128 | $ 70 | $ 8,960.00 |
| Paralegal | 111.3 | $ 35 | $ 3,895.50 |
| TOTAL | 813.6 | | $ 85,780.50 |

16. Defendant argues that the Court should not base an award on the hours submitted by plaintiff because the case did not warrant the use of three trial attorneys. However, a reduction in fee for use of multiple attorneys is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. *Jones v. Central Soya Company, Inc.*, 748 F.2d 586, 594 (11th Cir.1984); *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717 (5th Cir.1974). The record in this case indicates that the attorney handling the case for 3½ years turned the case over to other attorneys three weeks before trial. This fact explains, in part, the necessity of multiple trial counsel herein. The trial judge is in the best position to evaluate the reasonableness of the use of three trial attorneys by plaintiff, *Jones*, 748 F.2d at 594–595, and in the opinion of the Court, the use of multiple attorneys was reasonable given the length and complexity of the case.

17. Plaintiff has moved for a 1.5 multiplication of the lodestar based on the fact that the case was accepted on a contingent fee basis. The law is settled that multipliers are applicable only in "rare" cases of "exceptional success." *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). While counsel for plaintiff certainly achieved excellent results, the Court does not believe that this is the kind of extraordinary case warranting a multiplier. *See Lattimore v. Oman Construction*, 795 F.2d 930 (11th Cir.1986).

18. On May 29, 1987, costs were taxed against defendant in the amount of $2,352.70. Defendant has objected to the taxation of certain of the costs claimed by plaintiff, and the Court has reviewed these objections. Upon such review, the Court has determined that $631.85 in costs were inappropriately taxed. Specifically, the Court will not allow costs for the depositions of employees of Crown Cork and Seal taken June 6, 1986 ($447.35); for the deposition of John Duss ($132.75) or for the deposition of Wayne Triund ($51.75).

Based on all of the foregoing, it is hereby

ADJUDGED:

1. That plaintiff is awarded $221,441 in back pay, and $37,657.27 in incentive bonuses;

2. That plaintiff's reinstatement to his former position with defendant is ordered, should plaintiff wish to return to the job;

3. That plaintiff is reinstated to the Anheuser–Busch Salaried Employee Pension Plan, with full credited service and pension benefits as if he had not been discharged by defendant;

4. That plaintiff is awarded prejudgment interest in the amount of $104,667.05;

5. That plaintiff is awarded his attorney fees in the amount of $85,780.50;

6. That certain costs previously taxed in the amount of $631.85 shall be vacated, and the total costs taxed in this case shall be $1,720.85; and

7. That the Clerk of the Court shall enter judgment in favor of plaintiff as noted above.