Clark B. GATHERCOLE, Plaintiff,

v.

GLOBAL ASSOCIATES, International Atlas Service, Atlas Corporation, H.C. Smith Construction Company, James J. Morena, D.D. Mcafee, and Does I through XX, inclusive, Defendants.

No. C–81–2976 SAW.

United States District Court,
N.D. California.

March 31, 1983.

See also, D.C., 545 F.Supp. 1280.

Kim Malcheski, Donaldson, Malcheski ·& Parker, Willdorf & Stevens, San Francisco, Cal., for plaintiff.

Pillsbury, Madison & Sutro, Alson R. Kemp, Jr., William G. Alberti, San Francisco, Cal., for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR NEW TRIAL

WEIGEL, District Judge.

Plaintiff filed this action in 1981 alleging that he was discharged by defendant Global Associates (Global) in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Prior to his discharge, plaintiff was employed by Global as a co-pilot and then as a pilot of aircraft from approximately 1964 to 1979. By contract with the Department of the Army (Army), Global provides air transportation for the Kwajalein Missile Range (Kwajalein) on the Marshall Islands. On August 5, 1979, when plaintiff reached the age of sixty, he was discharged as an aircraft pilot by Global on the basis of his age.

Following a three day trial, on January 7, 1983, the jury returned a verdict in favor of plaintiff in the sum of $226,406.50. Defendants move for judgment notwithstanding the verdict or, in the alternative, for new trial.

■ A motion for judgment notwithstanding the verdict is properly granted only "if, without accounting for the credibility of the witnesses, * * * the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion—that the moving party is entitled to judgment notwithstanding the adverse verdict." *William Inglis & Sons Baking Co. v. ITT Cont. Baking Co.,* 668 F.2d 1014, 1026 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 57–58, 74 L.Ed.2d 61 (1982). A new trial is appropriate if "the jury's verdict was clearly contrary to the weight of the evidence." *Id.* at 1027.

### *Defendants' Motion for Judgment Notwithstanding the Verdict*

■ Defendants offer three grounds in support of their motion. First, they assert that the so-called "Age 60 Rule," which requires mandatory retirement of pilots at age 60, is a bona fide occupational qualification (BFOQ) for their pilots under Section 4(f) of the ADEA, 29 U.S.C. § 623(f), because the Army incorporated the Age 60 Rule into Global's employment contract. Defendants further urge that the Army has regulatory authority over air transportation on Kwajalein within the meaning of 29 C.F.R. § 860.102 (1981)[1] and, pursuant to that authority, has validated the Age 60 Rule for Global's pilots.

The record does not support defendants' motion on this ground. Assuming that the Army has regulatory authority over air transportation on Kwajalein comparable to that which the Federal Aviation Agency (FAA) exercises over commercial air transportation,[2] the evidence does not demonstrate that the Army "clearly imposed [the Age 60 Rule on Global's operations on Kwajalein] for the safety and convenience of the public." 29 C.F.R. § 860.102 (1981). Defendants presented no evidence at trial of the Army's basis for requiring that its airline contractor at Kwajalein adhere to the Age 60 Rule other than a letter from an Army official to plaintiff stating that the

---

1. That Section states in pertinent part:

The following are illustrations of possible bona fide occupational qualifications

(d) Federal statutory and regulatory requirements which provide compulsory age limitations for hiring or compulsory retirement, without reference to the individual's actual physical condition at the terminal age, when such conditions are clearly imposed for the safety and convenience of the public. This exception would apply, for example, to airline pilots within the jurisdiction of the Federal Aviation Agency. Federal Aviation Agency regulations do not permit airline pilots to engage in carrier operations, as pilots, after they reach age 60.

2. *See* 14 C.F.R. Part 121.

Rule was imposed "for reasons of safety in air transportation at the Kwajalein Missile Range." [3] This bald assertion does not constitute evidence that "an appropriate federal agency has determined *after a full hearing* that, as to persons over the age of 60, it is not possible to use factors other than age to predict the likelihood of the onset of a sudden condition that could imperil the passengers" (emphasis added). *Tuohy v. Ford Motor Co.,* 490 F.Supp. 258, 264 (E.D.Mich. 1980), *rev'd on other grounds,* 675 F.2d 842 (6th Cir.1982). Absent evidence of the Army's basis for its decision, the fact that the Army seeks to require defendants to engage in discriminatory employment practices in violation of the ADEA does not insulate defendants from liability under that Act.[4]

■ Second, defendants assert that medical evidence presented at trial conclusively establishes that the Age 60 Rule is a BFOQ for Global's pilots. Because the parties presented conflicting evidence on this issue, defendants are not entitled to judgment or to a new trial on this ground. The jury could reasonably have concluded from the evidence that application of the Age 60 Rule to Global's pilots was not reasonably necessary to the essence of its business, that Global did not have a sufficient factual basis for believing that pilots past age 60 would be unable to perform their duties safely and efficiently, and that it was not highly impractical to deal with pilots past age 60 on an individualized basis.[5] *See Criswell v. Western Air Lines,* 514 F.Supp. 384, 389 (C.D.Cal.1981).

■ Third, defendants contend that their good faith reliance on the Department of Labor's validation of the Age 60 Rule, *see* 29 C.F.R. § 860.102 (1981), constitutes a defense to plaintiff's claim pursuant to Section 7(e) of the ADEA, 29 U.S.C. § 626(e), which incorporates Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259. That Section provides in pertinent part:

(a) * * * [N]o employer shall be subject to any liability or punishment * * * if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section * * *

(b) The agency referred to in subsection (a) of this section shall be—

3. Defendants' Ex. 9. In addition, defendants failed to demonstrate that all air traffic flying into Kwajalein was required to adhere to the Age 60 Rule.

4. Enforcement of the ADEA under these circumstances will not place defendants at a competitive disadvantage in competing for Army contracts. *See Gathercole v. Global Associates,* 545 F.Supp. 1280, 1282 (N.D.Cal.1982).

5. The BFOQ instruction stated:

If you find that the plaintiff has persuaded you by a preponderance of the evidence that he was terminated by the defendants and that his age was a determining factor in his termination, then you must consider the defendants' defense that age is a "bona fide occupational qualification" for its pilots. This defense is usually abbreviated "BFOQ."

The burden of proof to establish a BFOQ is on the defendants. If defendants establish a BFOQ by a preponderance of the evidence, then their age discrimination is lawful under federal law.

To establish a BFOQ, defendants must satisfy both elements of a two-pronged test. First, defendants must show that the BFOQ is reasonably necessary to the essence of defendants' business. In this regard, I instruct you that the normal essence of defendants' business is the safe transportation of air passengers. Second, defendants must show that they had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all persons over age sixty (60) would be unable to perform safely and efficiently the duties of a pilot; or that it is impossible or highly impractical to deal with each pilot over age sixty (60) on an individualized basis to determine his particular ability to perform his job safely.

If you find that defendants have failed to prove a BFOQ defense, then you must find for the plaintiff.

Defendants' objection to this instruction, and to the Court's failure to give further instructions concerning the relationship between passenger safety and the BFOQ defense, is groundless. *See Smallwood v. United Air Lines,* 661 F.2d 303, 307 (4th Cir.1981), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982); *Harriss v. Pan American World Airways,* 649 F.2d 670, 676–77 (9th Cir.1980); *Criswell v. Western Air Lines,* 514 F.Supp. 384, 389 & n. 7 (C.D.Cal.1981).

(1) in the case of the Fair Labor Standards Act of 1938, as amended—the Administrator of the Wage and Hour Division of the Department of Labor;

(2) in the case of the Walsh-Healey Act—the Secretary of Labor, or any Federal officer utilized by him in the administration of such Act; and

(3) in the case of the Bacon-Davis Act—the Secretary of Labor.

29 U.S.C. § 259. Defendants are not entitled to a good faith defense based upon 29 C.F.R. § 860.102 (1981), because that regulation validates the FAA's Age 60 Rule only for commercial pilots and not for pilots of "public" aircraft. Defendants' pilots operated aircraft owned by the Army. Hence, defendants did not act "in conformity with" that regulation when they discharged plaintiff. Thus, their asserted reliance on 29 C.F.R. § 860.102 (1981) does not entitle them to a good faith defense. *See Gathercole v. Global Associates,* 545 F.Supp. 1280 (N.D.Cal.1982); *Pilkenton v. Appalachian Regional Hosp.,* 336 F.Supp. 334, 340 (W.D. Va.1971).

■ Defendants also assert that their reliance in discharging plaintiff on the Army's adoption of the Age 60 Rule in its contract with Global entitles them to a good faith defense. The good faith defense, however, is available to defendants only if they relied in good faith upon a regulation issued by the Department of Labor. *See* 29 U.S.C. § 259. The Army is not authorized to issue binding regulations interpreting the ADEA, which is administered by the Department of Labor. *See United States v. Stocks Lincoln Mercury,* 307 F.2d 266, 271 (10th Cir.1962) (good faith defense requires

that regulation be issued by agency "vested with primary or final authority to administer the provisions of the particular Act in question"). Consequently, assuming that the Army's incorporation of the Age 60 Rule into its contract with Global constitutes an administrative regulation within the meaning of 29 U.S.C. § 259(a), defendants cannot invoke that regulation as the basis for a good faith defense.[6]

*Defendants' Motion for New Trial*

■ Defendants offer four grounds in support of their motion for new trial. First, they contend that submission of a general verdict without interrogatories to the jury was improper and prejudicial. Use of a general verdict is proper in an ADEA action. *See Cancellier v. Federated Dept. Stores,* 672 F.2d 1312, 1317 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982).

■ Second, defendants urge that comments by the Court during trial prejudiced their case and hence require that a new trial be granted. A federal district court judge has broad powers to control the conduct of trials, to examine witnesses, and to comment on evidence. *See Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). At the same time, a judge must make "clear to the jury that all matters of fact are submitted to their determination." *Id.* at 469, 53 S.Ct. at 699. The jury was so charged in this case (Tran., Jan. 7, 1983, at 79–80). Under these circumstances, the Court's comments were neither improper nor prejudicial to defendants.

■ Third, defendants contend that the admission into evidence of Defendants' Ex-

---

**6.** Defendants also contend that the Court's instruction to the jury on the ADEA's good faith defense was improper. That instruction stated:

If you find that plaintiff has established a prima facie case of unlawful age discrimination, then you must consider defendants' second defense, that they reasonably relied in good faith on an administrative regulation to conclude that their termination of plaintiff would be lawful. For defendants to establish this defense, they must prove that in terminating plaintiff they acted in actual conformi-

ty with the administrative regulation. Defendants did not act in actual conformity with the regulation, and hence this defense is not available to them, if the regulation they relied upon to terminate plaintiff did not actually apply to plaintiff and govern plaintiff's employment by defendants.

Defendants' objection to this instruction is meritless. *See* 29 U.S.C. §§ 626(e), 259; 29 C.F.R. §§ 790.14(a), 790.14(c) (1981); *see also Pilkenton v. Appalachian Regional Hosp.,* 336 F.Supp. 334, 340 (W.D.Va.1971).

hibit 16, the Report of the National Institute on Aging Panel on the Experienced Pilots Study, was improper, prejudicial, and requires that a new trial be granted.[7] That study is a public report that Congress ordered be prepared and hence was properly admitted pursuant to Fed.R.Evid. 803(8)(B).

Finally, defendants argue that the jury's damages award was excessive, and that consequently a new trial is required. They offer three grounds in support of this contention. First, defendants urge that plaintiff is entitled to backpay only for the period from the date of his discharge, August 8, 1979, to the date his "FAA Class I Flight Certificate" (Flight Certificate) expired, February 3, 1980.[8] After his Flight Certificate expired, defendants assert, plaintiff was not qualified for employment as a pilot by Global.

 This contention is without merit. After his discharge by Global, plaintiff retired as a commercial pilot and obtained employment outside the field of aviation. Plaintiff was not required to maintain his Flight Certificate once he had been discharged. *See Hannan v. Chrysler Motors,* 443 F.Supp. 802, 805 (E.D.Mich.1978). A plaintiff wrongfully discharged under the ADEA may recover those wages and benefits "to which plaintiff would [have been] entitled had he remained employed by defendant until the trial date * * * *" *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 373 (8th Cir.1974); *see Rodriguez v. Taylor,* 569 F.2d 1231, 1243 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Monroe v. Penn-Dixie Cement Corp.,* 335 F.Supp. 231, 235 (W.D. Ga.1971). Thus, absent evidence that had plaintiff continued to be employed by Global as a pilot he would have been discharged prior to the date of trial for some reason other than his age, plaintiff is entitled to lost wages and benefits up to the date of trial.

Second, defendants assert they are entitled to a new trial on the ground that the jury made an improper award of liquidated damages.[9] Under the ADEA, if an employer commits a willful violation of the Act the plaintiff may recover liquidated damages in an amount equal to his lost wages and benefits. 29 U.S.C. §§ 216(b), 626(b). Defendants argue that the evidence requires a finding that Global did not willfully violate the ADEA.

 Neither the Act nor its legislative history describes what constitutes a willful violation. Courts have filled this void with a number of conflicting definitions. *See, e.g., Syvock v. Milwaukee Boiler Mfg.,* 665 F.2d 149, 154–56 (7th Cir.1981) (violation willful if defendant knew or reasonably should have known that action taken violated ADEA); *Goodman v. Heublein, Inc.,* 645 F.2d 127, 131 & n. 6 (2d Cir.1981) (dicta) (violation is willful in any discriminatory treatment case, as opposed to a discriminatory impact case); *Wehr v. Burroughs Corp.,* 619 F.2d 276, 279–83 (3d Cir.1980) (violation willful if intentional, knowing, voluntary, or reckless); *Leob v. Textron, Inc.,* 600 F.2d 1003, 1020 & n. 27 (1st Cir. 1979) (dicta) (willfulness requires "specific intent" to disobey or disregard law); *Hays v. Republic Steel Corp.,* 531 F.2d 1307 (5th Cir.1976) (violation willful if employer knew action might have implications under the ADEA). In this circuit, a violation of the ADEA is willful if the employer acted voluntarily, intentionally, and knowingly.[10] *Kelly v. American Standard, Inc.,* 640 F.2d 974, 979–80 (9th Cir.1981). Thus, an employer who violates the ADEA by consciously discharging an employee based upon the

---

7. Defendants' Exhibit 16 was admitted on plaintiff's motion and over defendants' objection (Tran., Jan. 7, 1983, at 3–4).

8. At trial, plaintiff requested backpay damages from the date of his discharge to December 31, 1982, five days prior to the commencement of trial. *See* Plaintiff's Ex. 10.

9. The jury's award of $226,406.50 exceeded the $124,983.60 that plaintiff claimed constituted his lost wages and benefits. Thus, the jury awarded plaintiff liquidated damages.

10. A willful violation does not require that the employer have knowledge that the contemplated action has "implications under the Act * * *" *Kelly, supra,* 640 F.2d at 980.

648

employee's age commits a willful violation of the Act. *See Goodman, supra,* 645 F.2d at 131 n. 6; *Kelly, supra,* 640 F.2d at 980. By contrast, an employer who violates the Act by using a selection criterion that is facially neutral with respect to age but has a discriminatory impact on older workers does not necessarily commit a willful violation.[11] *See Kelly, supra,* 640 F.2d at 980 & n. 9; *Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981).

■ Defendants in this case concede that they discharged plaintiff solely because of his age. This admission is sufficient to establish willfulness within the meaning of 29 U.S.C. § 626(b). Consequently, defendants are not entitled to a new trial based upon the jury's award of liquidated damages.

■ Third, defendants contend that the jury failed to subtract from plaintiff's lost wages and benefits all of his earnings, unemployment compensation, and Social Security early retirement benefits received after his discharge. The jury was not required to deduct plaintiff's early retirement benefits from his lost wages. *See Naton v. Bank of California,* 649 F.2d 691, 700 (9th Cir.1981) (benefits plaintiff would have received had he retired voluntarily not deductible from lost wages). At trial, plaintiff asserted that he suffered lost wages and benefits in the amount of $124,983.60 as a result of his discharge. *See* Plaintiff's Ex. 10. The jury should have offset against this amount wages in the sum of $12,058.00 and unemployment benefits in the amount of $2,288.00 that plaintiff received in mitigation of his damages. *See* Court Ex. 1. These deductions would have reduced plaintiff's damages to $110,637.60. The jury could have properly doubled this amount by awarding liquidated damages, and reached a total award of $221,275.20.

■ The jury's actual award of $113,-203.25, which it doubled by granting liqui-

dated damages to reach a total award of $226,406.50, is not inconsistent with the evidence. Plaintiff's calculations of his lost wages and benefits were estimates only, *see* Plaintiff's Ex. 10, and the jury's award, prior to doubling, was only $2,565.65 higher than plaintiff's estimate of his lost wages less his earnings and unemployment compensation. The jury could have reasonably concluded from the evidence that plaintiff's estimate of his lost wages was too conservative, and accordingly adjusted it slightly upward. Under these circumstances, the jury's verdict was not inconsistent with the evidence. *See Kelly v. American Standard, Inc.,* 640 F.2d 974, 985–86 (9th Cir.1981).

Accordingly,

IT IS HEREBY ORDERED that defendants' motion for judgment notwithstanding the verdict or, in the alternative, for new trial is denied.

11. Under those circumstances, the violation would not be willful unless use of the facially neutral selection criterion was a mere pretext for purposeful discrimination based on age. *Cf. Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1112–13 (4th Cir.1981).